UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CASE NO. 5:06CV-125-R

WALTER GATEWOOD, et ux.                                                                PLAINTIFFS

v.

UNIVERSAL UNDERWRITERS LIFE INSURANCE COMPANY                   DEFENDANT

**MEMORANDUM OPINION**

This matter is before the Court on Defendant's Motion for Partial Summary Judgment (Docket #23). Plaintiffs filed a response (Docket #24) to which Defendant has replied (Docket #27). This matter is now ripe for adjudication. For the reasons that follow, Defendant's Motion is GRANTED.

**BACKGROUND**

This case arises from the denial of Walter Gatewood's claim for benefits under a credit disability insurance policy issued by Defendant.[1] On January 20, 2005, Gatewood completed an application for the subject policy. The application states in pertinent part:

> You are applying for the credit insurance marked above. Your signature below means that you agree, to the best of your knowledge and belief, that:
>
> . . .
>
> 4. You, the Principal Debtor, are not eligible for Accident and Health Insurance if you have within the last 3 years before the effective date received medical advice or treatment or been advised to receive medical advice or treatment for Mental Disorders or Disorders of the Back, Spine or Neck.

---

[1] On March 23, 2007, notice was provided to the Court that the Plaintiff, Walter Gatewood, is deceased. In accordance with Fed. R. Civ. P. 25(b) the action proceeds in favor of or against the surviving party, Connie Gatewood.

Mr. Gatewood signed the application.[2]

On May 2, 2005, Mr. Gatewood submitted an initial claim for disability benefits for an injury to his knee. The Disability Claim Statement required the Insured to: "List all other physicians, chiropractors, psychologists, or hospitals who have treated you during the five years prior to the date you bought the insurance, regardless of the condition." Mr. Gatewood did not disclose any prior chiropractic treatment on the Disability Claim Statement. The May 2, 2005 Claim was paid by Defendant.

Mr. Gatewood executed a second Disability Claim Statement on February 22, 2006, which was received by Defendant on March 21, 2006. The second claim was filed as a result of Mr. Gatewood's diagnosis of adenocarcinoma of the esophagus. On this Disability Claim Statement, Mr. Gatewood indicated that he had previously treated with Elliot Chiropractic from January 2001 to January 2006 for "Back ache, adjustment." As part of its investigation of the claim, Defendant obtained Mr. Gatewood's records from Elliot Chiropractic. The records indicated that Mr. Gatewood had been continuously treating with a chiropractor for his cervical, thoracic, and lumbar spine during the three years prior to executing the application. Mr. Gatewood contends that he visited the chiropractor for massages and therapeutic purposes only and disputes that he visited the chiropractor for any type of disorder of the back, neck, or spine.

Defendant notified Mr. Gatewood in writing that his claim was being denied, explaining:

> Since you received medical advice or treatment for a Disorder of the Back and Spine during the 3 years prior to the effective date, you were not eligible for the credit

---

[2] Mr. Gatewood also signed a supplement to the credit insurance application in which he indicated that the had not received or been advised to receive medical diagnosis, consultation, or treatment within the last five years for a sprain, strain, injury or disorder of the back, neck, or spine.

2

disability coverage at the time of purchase. Therefore the contract is void and no benefits are due.

We had previously paid disability benefits for the period of March 29, 2005 through September 18, 2005. You did not disclose the fact that you had chiropractic treatment on the claim form reviewed for benefits for the above stated period. If we had known of this treatment when you claimed benefits for this period we would not have paid the claim and would have voided the insurance contract at that time.[3]

On June 27, 2006, Mr. Gatewood and his wife filed a lawsuit against Defendant in Graves Circuit Court asserting breach of contract and various bad faith claims. The case was removed to this Court on July 26, 2006. On February 9, 2007, the bad faith claims were bifurcated from the underlying breach of contract claim.

## STANDARD

Summary judgment is available under Fed. R. Civ. P. 56(c) if the moving party can establish that the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. J. C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). The test is whether the party bearing the burden of proof has presented a jury question as to each element in the case. *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996). The plaintiff must present more than a mere scintilla of

---

[3] Defendant also indicated that they would deduct the full amount of the premium refund from the benefits previously paid to Mr. Gatewood, and requested Mr. Gatewood reimburse them for the remaining overpayment at his earliest convenience.

evidence in support of his position; the plaintiff must present evidence on which the trier of fact could reasonably find for the plaintiff.  *See id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)).  Mere speculation will not suffice to defeat a motion for summary judgment: "the mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment.  A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Moinette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996).  Finally, while Kentucky state law is applicable to this case pursuant to *Erie Railroad v. Tompkins*, 304 U.S. 64 (1938), a federal court in a diversity action applies the standards of Fed. R. Civ. P. 56, not "Kentucky's summary judgment standard as expressed in *Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.*, 807 S.W.2d 476 (Ky. 1991)." *Gafford v. Gen. Elec. Co.*, 997 F.2d 150, 165 (6th Cir. 1993).

## DISCUSSION

Plaintiffs claim that Defendant breached the terms of the contract by failing to pay Mr. Gatewood's Disability Claim Statement of February 22, 2006.  To state a cause of action for breach of contract, Plaintiffs must show the existence of a contract, breach, and damages by reason of the breach. *Fannin v. Commercial Credit Corp.*, 249 S.W.2d 826, 827 (Ky. 1952).

The Kentucky Supreme Court has summarized many of the canons to be used in the interpretation of insurance contracts within the commonwealth:

> [A]s to the manner of construction of insurance policies, Kentucky law is crystal clear that exclusions are to be narrowly interpreted and all questions resolved in favor of the insured.  Exceptions and exclusions are to be strictly construed so as to render the insurance effective.  Any doubt as to the coverage or terms of a policy should be resolved in favor of the insured.  And since the policy is drafted in all details by the insurance company, it must be held strictly accountable for the language used.

*Eyler v. Nationwide Mut. Fire Ins. Co.*, 824 S.W.2d 855, 859-60 (Ky. 1992) (citations omitted). However, these canons are only applicable "when the language of the insurance contract is ambiguous or self-contradictory. Otherwise, the contract is to be read according to its plain meaning, its true character and purpose, and the intent of the policies." *Peoples Bank & Trust Co. v. Aetna Cas. & Sur. Co.*, 113 F.3d 629, 636 (6th Cir. 1997).

A contract which is void ab initio is of no legal effect and is unenforceable. *See Lykins v. Oaks*, 150 S.W.2d 231, 232 (Ky. 1941); *Commonwealth v. Whitworth*, 74 S.W.3d 695, 700 (Ky. 2002). Where a contract is found to be void ab initio, there can be no damages as there was no contract. *Carroll Gas & Oil Co. v. Skaggs*, 21 S.W.2d 445, 450-51 (Ky. 1929). Defendant argues that the contract was void ab initio because Plaintiffs failed to disclose that Mr. Gatewood had received medical advice or treatment for a disorder of the back, spine, or neck in the three years preceding the policy.

## I.     MATERIAL MISREPRESENTATION

Material or fraudulent misrepresentations, even if innocently made, in an application for an insurance policy bar recovery on the policy. *Ky. Cent. Life Ins. Co. v. Combs*, 432 S.W.2d 417 (Ky. 1968); *Globe Indem. Co. v. Daviess*, 47 S.W.2d 990, 994 (Ky. 1932). KRS § 304.14-110 provides:

> All statements and descriptions in any application for an insurance policy or annuity contract, by or on behalf of the insured or annuitant, shall be deemed to be representations and not warranties. Misrepresentations, omissions, and incorrect statements shall not prevent a recovery under the policy or contract unless either:
>
> (1) Fraudulent; or
>
> (2) Material either to the acceptance of the risk, or to the hazard assumed by the insurer; or
>
> (3) The insurer in good faith would either not have issued the policy or contract, or would not have issued it at the same premium rate, or would not have issued a policy

> or contract in as large an amount, or would not have provided coverage with respect to the hazard resulting in the loss, if the true facts had been made known to the insurer as required either by the application for the policy or contract or otherwise. This subsection shall not apply to applications taken for workers' compensation insurance coverage.

"The rule is that a false answer is material if the insurer, acting reasonably and naturally in accordance with the usual practice of life insurance companies under similar circumstances, would not have accepted the application if the substantial truth had been stated therein." *Mills v. Reserve Life Ins. Co.*, 335 S.W.2d 955, 958 (Ky. 1960).

**A.      Misrepresentation**

Plaintiffs argue that although Mr. Gatewood visited the chiropractor, he did so for massages and therapeutic purposes only and that the visits were purely for enjoyment and recreational reasons and, therefore, he did not receive medical advice or treatment during these visits. Hence, Plaintiffs assert that Mr. Gatewood did not make a misrepresentation on the policy application.

The parties disagree as to whether the term "medical advice or treatment" as used in the policy application includes the advice or treatment of a chiropractor. "Medical" is defined as "of, relating to, or concerned with physicians or the practice of medicine." Merriam-Webster On-Line, *available at* http://www.m-w.com/dictionary/medical (Sept. 7, 2007). "Medicine" is defined as "the science and art dealing with the maintenance of health and the prevention, alleviation, or cure of disease." Merriam-Webster On-Line, *available at* http://www.m-w.com/dictionary/medicine (Sept. 7, 2007). Kentucky defines the word "chiropractic" to mean "the science of diagnosing and adjusting or manipulating the subluxations of the articulations of the human spine and its adjacent tissues." KRS § 312.015(2). A "chiropractor" is defined as:

> [O]ne qualified by experience and training and licensed by the board to diagnose his patients and to treat those of his patients diagnosed as having diseases or disorders

6

> relating to subluxations of the articulations of the human spine and its adjacent tissues by indicated adjustment or manipulation of those subluxations and by applying methods of treatment designed to augment those adjustments or manipulation.[4]

KRS § 312.015(3). These definitions indicate that Kentucky views the advice or treatment of a chiropractor as medical advice or treatment.

Plaintiff argues that even though he went to the chiropractor he did not have a disorder of the back, spine, or neck. "Disorder" is defined as "an abnormal physical or mental condition." Merriam-Webster On-Line, *available at* http://www.m-w.com/dictionary/disorder (Sept. 7, 2007). In *Cook v. Life Investors Insurance Co. of America*, the Sixth Circuit stated that the word "disorder" as used in a question, similar to that at issue, on an insurance application was not ambiguous. 126 Fed. Appx. 722, 724 (6th Cir. 2005). The Court found that a "condition requiring at least 10 doctor visits over a two-year period - as did the pain in Ms. Cook's back and neck - plainly falls within the ordinary meaning of 'disorder,' in our view." *Id.* Plaintiff argues that this case is not controlling for the interpretation of the word disorder because the issue was whether ten doctor visits constituted a disorder and not whether the same would be true in the case of chiropractic visits. While the application in the *Cook* case specifically asked about treatment with a physician, the Court's holding can be applied to a broader spectrum of medical professionals. Here Mr. Gatewood had upwards of seventy-one appointments with the chiropractor for treatment of his cervical, thoracic, and lumbar spine. The Court finds that any condition requiring this amount of chiropractic visits constitutes a "disorder" of the back, spine, or neck.

---

[4] Any person licensed as a chiropractor "may sign death certificates and sign and execute all legal documents and certificates with the same authority as members of other schools or systems of treatment." KRS § 312.190.

**B.     Materiality**

Having found that Mr. Gatewood made a misrepresentation on his policy application, this Court must next determine whether such misrepresentation was material.

Plaintiffs argue that in order to prove that any false answer given on the insurance application was material, Defendant would need to produce an expert witness to testify to the usual and customary practices of an insurance company to determine whether the company would have accepted someone who visited a chiropractor.  Defendant asserts that any misrepresentation as to the applicant's state of health is material as a matter of law.

In *Mills v. Reserve Life Insurance Co.*, plaintiff indicated on his insurance policy application that he had never had diabetes although he knew at the time that he applied for the policy that he was suffering from diabetes.  335 S.W.2d at 956.  Defendant insurance company, upon learning that plaintiff had diabetes on and before the date of the application, informed plaintiff that the polices were cancelled ab initio.  *Id.* at 958.  Defendant insurance company averred in its answer to plaintiff's subsequent claim that had it known of plaintiff's diabetic condition, it would not have issued the policies.  *Id.*  In determining that plaintiff's misrepresentation was material, the Court quoted Appleman's Insurance Law and Practice at sections 214 and 245 on pages 210 and 270, respectively, stating:

> Thus, the majority rule is at the present time that a misrepresentation as to the applicant's state of health is material *as a matter of law* and proof of the falsity thereof will avoid the contract.  Likewise, the statement of the applicant that he had never suffered from disease, or his denial of ever having suffered from certain specified diseases or disorders is material *as a matter of law* so as to avoid the contract in the event of the falsity thereof . . . The rule seems to be that where the applicant declares that he has not received medical or surgical care and attention and such statement is false, that it must be considered material *as a matter of law* so as to preclude recovery under the policy.

*Id.* Although Appleman's, as quoted, stated that the majority rule at that time was that a misrepresentation as to the applicant's state of health was material as a matter of law, the Court went on to state:

> Diabetes is a notoriously serious and chronic malady for which there is no known cure. As is evidenced by this very case, a victim of the disease frequently requires hospitalization in order to arrest and contain the illness and to prevent its taking a fatal course. It is well known that considerable medical expenses must attend the continuous regulation and treatment of diabetes. The determining fact on this point is simply this: If [defendant insurance company] had *known* about the conditions of [plaintiff's] health and had *known* that he had recently been hospitalized for the treatment of diabetes, it would not have issued these insurance policies to him. The misrepresentations set forth in the application, therefore, were directly material to the risk.

*Id.* Thus, the Court did not rely solely on the fact that plaintiff had made a misrepresentation concerning his state of health. The Court relied on the severity of the disease and the care that such a disease requires. It is clear that the Court based its holding on the actions defendant insurance company would have taken had the plaintiff's true condition been known.

Here, the application for insurance states that the applicant is not eligible for Accident and Health Insurance if the applicant received medical advice or treatment for disorders of the back, neck, or spine. It is clear that the usual practice of the insurance company was to reject applicants with conditions such as Plaintiff's who treat with chiropractors. Hence, Mr. Gatewood's misrepresentation as to the medical treatment he received for his back, neck, and/or spine resulted in Defendant accepting an application it would not have accepted if the substantial truth had been stated therein. Such a misrepresentation is material. *See Mills*, 335 S.W.2d at 958. No expert is necessary in this case to demonstrate materiality, as the policy application alone demonstrates that such a misrepresentation would be material.

9

## CONCLUSION

For the foregoing reasons the Defendant's Motion for Partial Summary Judgment is GRANTED.

An appropriate order shall issue.