UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CASE NO. 5:06CV-125-R

WALTER GATEWOOD, et ux.                                                                      PLAINTIFFS

v.

UNIVERSAL UNDERWRITERS LIFE INSURANCE COMPANY                        DEFENDANT

**MEMORANDUM OPINION**

This matter comes before the Court on Defendant's Motion for Summary Judgment on Plaintiffs' Remaining Claims (Docket #31). Although Plaintiffs did not file a response, the time for such filings has passed. This matter is now ripe for adjudication. For the following reasons, Defendant's Motion is GRANTED.

**BACKGROUND**

This case arises from the denial of Walter Gatewood's claim for benefits under a credit disability insurance policy issued by Defendant.[1] On January 20, 2005, Gatewood completed an application for the subject policy. The application states in pertinent part:

> You are applying for the credit insurance marked above. Your signature below means that you agree, to the best of your knowledge and belief, that:
>
> . . .
>
> 4. You, the Principal Debtor, are not eligible for Accident and Health Insurance if you have within the last 3 years before the effective date received medical advice or treatment or been advised to receive medical advice or treatment for Mental Disorders or Disorders of the Back, Spine or Neck.

---

[1] On March 23, 2007, notice was provided to the Court that the Plaintiff, Walter Gatewood, is deceased. In accordance with Fed. R. Civ. P. 25(b) the action proceeds in favor of or against the surviving party, Connie Gatewood.

Mr. Gatewood signed the application.[2]

On May 2, 2005, Mr. Gatewood submitted an initial claim for disability benefits for an injury to his knee. The Disability Claim Statement required the Insured to: "List all other physicians, chiropractors, psychologists, or hospitals who have treated you during the five years prior to the date you bought the insurance, regardless of the condition." Mr. Gatewood did not disclose any prior chiropractic treatment on the Disability Claim Statement. The May 2, 2005 Claim was paid by Defendant.

Mr. Gatewood executed a second Disability Claim Statement on February 22, 2006, which was received by Defendant on March 21, 2006. The second claim was filed as a result of Mr. Gatewood's diagnosis of adenocarcinoma of the esophagus. On this Disability Claim Statement, Mr. Gatewood indicated that he had previously treated with Elliot Chiropractic from January 2001 to January 2006 for "Back ache, adjustment." As part of its investigation of the claim, Defendant obtained Mr. Gatewood's records from Elliot Chiropractic. The records indicated that Mr. Gatewood had been continuously treating with a chiropractor for his cervical, thoracic, and lumbar spine during the three years prior to executing the application.

Defendant notified Mr. Gatewood in writing that his claim was being denied, explaining:

> Since you received medical advice or treatment for a Disorder of the Back and Spine during the 3 years prior to the effective date, you were not eligible for the credit disability coverage at the time of purchase. Therefore the contract is void and no benefits are due.

We had previously paid disability benefits for the period of March 29, 2005 through

---

[2] Mr. Gatewood also signed a supplement to the credit insurance application in which he indicated that the had not received or been advised to receive medical diagnosis, consultation, or treatment within the last five years for a sprain, strain, injury or disorder of the back, neck, or spine.

September 18, 2005. You did not disclose the fact that you had chiropractic treatment on the claim form reviewed for benefits for the above stated period. If we had known of this treatment when you claimed benefits for this period we would not have paid the claim and would have voided the insurance contract at that time.[3]

On June 27, 2006, Mr. Gatewood and his wife filed a lawsuit against Defendant in Graves Circuit Court asserting breach of contract and various bad faith claims. The case was removed to this Court on July 26, 2006. On February 9, 2007, the bad faith claims were bifurcated from the underlying breach of contract claim.

On September 12, 2007, this Court entered an Order granting Defendant summary judgment on the contract claim on the grounds that Mr. Gatewood made a material misrepresentation on the subject policy application.

**STANDARD**

Summary judgment is available under Fed. R. Civ. P. 56(c) if the moving party can establish that the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. J. C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). The test is whether the party bearing the burden of proof has presented a jury question as to each element in the case. *Hartsel v.*

---

[3] Defendant also indicated that they would deduct the full amount of the premium refund from the benefits previously paid to Mr. Gatewood, and requested Mr. Gatewood reimburse them for the remaining overpayment at his earliest convenience.

3

*Keys*, 87 F.3d 795, 799 (6th Cir. 1996). The plaintiff must present more than a mere scintilla of evidence in support of his position; the plaintiff must present evidence on which the trier of fact could reasonably find for the plaintiff. *See id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). Mere speculation will not suffice to defeat a motion for summary judgment: "the mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment. A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Moinette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996). Finally, while Kentucky state law is applicable to this case pursuant to *Erie Railroad v. Tompkins*, 304 U.S. 64 (1938), a federal court in a diversity action applies the standards of Fed. R. Civ. P. 56, not "Kentucky's summary judgment standard as expressed in *Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.*, 807 S.W.2d 476 (Ky. 1991)." *Gafford v. Gen. Elec. Co.*, 997 F.2d 150, 165 (6th Cir. 1993).

## DISCUSSION

In order to establish a claim for bad faith against an insurance company for refusal to pay the insured's claim, the insured must prove three elements:

> (1) the insurer must be obligated to pay the claim under the terms of the policy; (2) the insurer must lack a reasonable basis in law or fact for denying the claim; and (3) it must be shown that the insurer either knew there was no reasonable basis for denying the claim or acted with reckless disregard for whether such a basis existed.

*Wittmer v. Jones*, 864 S.W.2d 885, 890 (Ky. 1993) (quoting *Federal Kemper Ins. Co. v. Hornback*, 711 S.W.2d 844, 846-47 (Ky. 1986) (Leibson, J., dissenting)). This analysis applies to all bad faith liability theories whether premised upon common law theory or a statutory violation. *Davidson v. Am. Freightways, Inc.*, 25 S.W.3d 94, 99 (Ky. 2000). Here the Court has already determined that Defendant is not required to pay the claim under the terms of the policy. Thus Plaintiff cannot

establish a bad faith claim against Defendant.

## CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment is GRANTED.

An appropriate order shall issue.